that the term is introduced for the first time in the art in this patent, and both the intrinsic and the extrinsic records support that. It's unequivocal. So under the Court's rules of claim construction, I'm particularly talking about Rodeto and Bell Atlantic, the Court must look to the specification for a definition of the term, and the definition can be implied. Here, the patentee uses the claim term in the entire patent specification consistent with a particular meaning, and that meaning is our proposed construction. And now there are six statements, clear, unequivocal, some repeated more than once, that establish our definition. First, the tiles, quote, replace the functionality of a user's desktop and offer similar and additional features. That's at column 10. Second, the specification repeatedly states, unequivocally, that tiles perform the bookmark function. That's at column 4, column 11, and column 8. Anyone of skill in the art, and indeed in the patent specification it's described, knows that a bookmark is persistent and that it is assigned to the information source of which the bookmark pertains. You have, as I, correct me if I'm wrong, but there are three particular components of the claim construction that you are proposing. One is something about assigned information, second is persistence, and the third is immediate access. Access upon selection, yes. But immediate access upon selection. But I want to start with assigned and associated, and I will confess I'm having a very hard time understanding what the distinction is. I kept reading the sentences, particularly, I guess, in your reply brief in which you tried to explain it, and it could just be me, but I still don't get it. Right. It's actually very simple, and we did make it more complicated than it was. So essentially, and this gets to the next specification reference I was going to get to, the patent says when a tile is selected, the tile instantly provides the user with access to the underlying information. And the associated with quote from the claims in the spec more refers to the tile being associated with an information source when it's not being selected. And so that when the selection process occurs, you then go to the information source that is prior art, doesn't do that. One of the pieces of prior art, if you select the tile or the item, it will go to a link or a hotspot that is within the tile that isn't necessarily or even often is the information source that's the subject of the tile. So the way I think about it, the selection upon access and the assigned are kind of go hand in hand, because the notion is that you select the tile and then boom, you go to that which is assigned. And that's also the bookmark references that I cited a moment ago. So just try one more time. Suppose that your assigned and immediate access view were correct, then what work would be doing in the claim by the other language about associated? So that if the tile were not being selected, it would be associated with the information source. So in other words, if the tile was just on the desktop and you weren't accessing it, it would be associated with an information source and according to the patent you would have a view into the application or the information source at that point. But then the assigned function takes into account when you actually select the tile, you go to the information source that's viewed in the tile. And under one of the pieces of prior art you don't. And the patent is very clear that the references I've already gone through, and I'm going to go through two more now, the patent is very clear that the whole purpose of the thing is you view the information source, select it, and then you go to that information source that you're viewing, not somewhere else. And you don't need a link or a hotspot or something else that you add to the tile in order to access the information source. And the next two quotes and the last two quotes that I have on this actually talk about that. So fifth, the tile and grid structure, quote, overlays the user's desktop and resides over existing applications without replacing any of them. And enables the applications to be called from the grid. That's the assigned access. Where is this, Mr. O? This is the column 11 roundabout line 15. And then dropping down to the bottom of that same section around column 30, it makes clear that in doing the grid assigned function, the calling of the grid that I just talked about, it, quote, replaces the user's desktop with a dynamic menuing system. And then the last quote I'll offer is the patent clearly says the present invention comprises a grid of tiles that reside on the computer's desktop. So those quotes are not descriptions of a preferred embodiment. They are descriptions of characteristics that the tiles have to have or else the statements wouldn't be true. So if a tile isn't persistent, it can't be a bookmark. It can't replace the desktop that we all use. It can't be a menu item on the desktop if it's not persistent. If a tile I'm sorry, persistent in your view means what? Preserved from session to session. Preserved from session to session. So it's automatically appearing on the screen or preserved in, you know, on the hard drive where... No, no, preserved on the screen. So that when you boot up the screen, you have the, it replaces the existing desktop. You have the icons that you had before. They're preserved from session to session. So then you'll have to set up your desktop anew each time. So you said that these are more than embodiment descriptions. Correct. How do we know that? Most of, almost all the language, not quite all that you quoted, but almost all of it comes in the detailed descriptions of the preferred embodiment. Right. But if you look at the nature of what is being described, it's not being described as a preferred embodiment. For example, the replace the user desktop. It's not that the invention replaces the user desktop in a preferred embodiment. It's that's what the invention does. That's the core of it. The present invention... Just to take that one alone, and I don't have this just as a concept as opposed to a specific thing in the spec, but you could have a single session replacement of the user desktop. That I could say today, I want, I don't know, the Windows 8 desktop, but tomorrow I want, you know, Windows 3.1. Some of us. Well, Your Honor, I don't think that's consistent with the way the specification describes it. I mean, the way the specification is describing it is it can go on top of the existing desktop situation. It's a grid structure. It resides on it. It's a menu system. The first use of resides, I think, is in the summary of the invention, but that says the grid, not necessarily a particular tile. It says a grid of tiles. Right, but it doesn't say that each tile within it has to be the same from session to session, even assuming resides means persistence across sessions. Oh, I think that's what it means, and I think if you read the patent in its entirety, the context of it is you've got a grid that has a bunch of tiles on it that serve as a replacement for the icons, that are menus, that serve as menus, so that you can click on a tile and go to that, and it's assigned immediately. Well, I was going to ask you about what resides means, but now I don't have the citation anymore, but your first quotation from the spec five minutes ago about resides was from somewhere else in the spec. There's three places. Well, there's two places. You said the resides and overlays or something. Where was that? That is at column 11, around about line 15. Right, so that usage seems to be using resides to mean not something like my residence for tax purposes or something. It means this is where you're going to find it. Find it permanently. Well, I'm not sure it does. This seems to be using the term resides over existing applications without indicating carrying a notion of session to session non-transits. Well, I would not agree with that, Your Honor, because if you go down to the bottom of that same paragraph, it says it replaces the user's desktop with a dynamic menuing system. I've used laptops and regular devices. The icons come back. You don't want to reconfigure your desktop every time you start it, and that's what that's referring to. And then the other quote that the Court referred to is at column 4, lines 37 to 8, and that's where it says the present invention comprises a grid of tiles that reside on the user's desktop, and the patent really uses the term grid and tiles interchangeably. The grid is the structure on which the tiles sit or reside, and it covers the desktop. But just tell me what's wrong with, I mean, you clearly do think there's something wrong with saying, when it says the grid resides, so you can have, say, a six-tile grid, and that comes up next time you boot up the computer or whatever it is, but numbers 2 and 4 may be in the same space, but it's no longer the CNN, it's now the National Weather Service or something. No place in the patent describes that. No place. Every single place in the patent, including those that I just described, describe it as a permanent fixture unless you change it. And not just the six-tile structure, but actually the content of each tile. Yes, I think all of those references, if you read the patent in its entirety, I think all of the references, when it talks about a grid, it talks about tiles that are placed in the grid. So, Your Honor, I'm into my rebuttal time if you... Why don't you preserve it? Okay, I will. May it please the Court, good morning, my name is Joe McAuliffe, I represent the NAPALEE Microsoft. The Board found each of the four primary prior art references disclosed tiles that, when selected, provided access to an information source. Those findings were based not only on the disclosures of the references, but the testimony of Dr. Carter, an expert in the field, and various other pieces of evidence we put in the record. Those are factual findings supported by substantial evidence, and they're entitled to deference in this court. But whether they're legally material depends on claim construction, which has only a component being factual. So why don't we talk about the three claim construction issues? Okay, the first one is not a claim construction issue, I would argue. Their argument about the meaning of the word access. What they're really doing is arguing or disagreeing with how the Board applied that part of the claim interpretation to the prior art. And that's a fact question, which is, again, entitled to deference. And that's because they did not make, essentially, a claim construction argument to the Board that the access term really should mean immediate access, or one-click access, or without further steps access. That, and the fact that the actual phraseology of the interpretation, when selected provides access, was from their proposed interpretation. They can't appeal that. They proposed that language, and yes, they never said that it's a special kind of access. Am I right in thinking that you need to be right about more than that issue in order to prevail? Suppose you were wrong about persistence and wrong about assignment, but right about you don't need immediate access. I think if I'm right about that on the access issue, I think you need to affirm, because as we put in our brief, all these prior art references show assignment and association, even if you could find a difference between the two. But I don't think, again, correct me if I'm wrong, that the Board made findings as to those proposed elements of the proper claim construction, applying them to the prior art. That's true, because they rejected them as a claim construction. But, for example, they're not even arguing that MSIE kit and CHIN are not persistent, and I think the Board may have actually made some comments about that. But as we put in our brief, all those things show persistence and assignment, and I think it's plain on the face of them. So I think that you can affirm, even if you disagree with us on those things. I would like to say one other thing about access. Now, we've pointed out there are examples of tiles that have not...you click on it and you're given the ability to manipulate things like the mail tile, just like some of the references in the past. We also pointed out that Mr. Santoro said in a deposition that access could be just viewing it, and there's a very important point I want to make about that. That deposition testimony was given to me a few days before SERFCAS filed its preliminary response in the IPR, six months before it filed its formal response. So that definition of access was on the table, and they knew it, and they never said a word about it. They never went to the court. It's got to be immediate access. It's only here for the first time. I don't think the court should hear that argument in the first instance. They had an obligation to say that this is certain... Can you talk about the other two claim construction issues? So as far as persistence, the patent never says tiles are persistent. It says items in the metabase are persistent. Well, it says the grid of tiles resides. So what does that mean? And that's in the summary of the invention. Yeah, and as we pointed out below, that could be just for one session. In fact, one of the prior art references we relied on in response to the motion to amend had icons that resided solely for a session. They went away when your session was done. So resides could be for a session, could be for session to session. Dr. Carter testified, and we cited this in our reply brief, that in the prior art there were windows that were persistent, but there were also windows that were not persistent. So graphical user interface elements in the prior art could be persistent, could not be persistent. It was just a feature, one facet that one could program into the system. So it must be interpreted with that background in mind. It could be for one session or another. What in the specification gives us an indication that in this context, when it says a grid of tiles that resides on the computer's desktop, doesn't mean what SURFCAST says it means? That is, it allows the possibility that it would be like an Airbnb residence just for a day or two. A number of things. First of all, it never says tiles are persistent from session to session, like I said. But does it ever separate, does it ever contemplate the possibility that the grid abides, but the tiles don't? Yes, because it also says that the tiles can be obtained from a remote server, and the more fulsome description of that embodiment in column 22 specifically says that when you change things in that embodiment, things can be saved from session to session. Not are, can be, optional. And of course, the only use of that word persistent is in that one passage in column 15, which is expressly described as a preferred embodiment. So there is nothing in the discussion. Address the more gestalt argument that Mr. Malkoff makes, that you read this as a whole, and what this is about is about replacing the desktop that you were given with another one, and that's what's going to now come up, because it better suits your tastes. It's not, because those statements are isolated statements in a detailed description. If you read this from start to finish, you'll see what they're talking about is an application program, not a new operating system. It's something that you can launch like a word processor or a browser or an email program. You can launch it today, maybe tomorrow you won't, and will it cover your entire screen, just like Microsoft Word might cover your entire screen? Maybe, maybe not, but it's just an application program. It's not intended to get rid of the operating system. Can it be used without using the underlying operating system, or at least the graphical user interface of the underlying operating system? Right, but the fact that it's an application program certainly doesn't exclude the possibility that this is a particular kind of application that's supposed to give you a new user interface permanently, until you willfully change it or something. I think that's right, and perhaps if they went to the patent office and wrote a claim that said desktop replacement, then they might be able to get a claim that would do that, but they don't have a claim in this patent that says anything about that, and in fact, they never asked the board to interpret the claims to require that functionality. Never. So I don't think desktop replacement is even at issue in this appeal, it couldn't be. It was never decided below, never argued below. What was argued was, when selected, it provides access to an information source. Wait, persistence was argued, because the board decided it. Persistence, persistence. Right, and persistence is from session to session, the next time I turn the computer on, it's going to have, you know, the look of, is it Windows 8 that has the grid structure now? Yeah, Windows 8 did. Right, right. But the patent never says that, Your Honor. It never says that the tiles are persistent on the screen. It says items in the database are persistent. That's different. Just because there's some, even information about tiles in a database doesn't mean that they pop up every time you turn on your screen. It never says tiles are persistent on the screen. Anywhere. And Mr. Alcock can come up here, he can't give you a site that it does. Because we all know the one place the word is used is column 15. And what it says is, and I know it by heart, items in the database are persistent. And that's all it says. And so can you make an attempt to explain what you understand the difference is between this assigned to a source and the, as a claim construction of the term tile and the other claim language associated with the source? I have no idea. I mean, they've never articulated any distinction whatsoever. The board said if it's the same thing, it's superfluous. If it means something different, it's inconsistent with the claims and the specification. They have never, and I didn't understand what Mr. Alcock said. He seems to be, and I will say this about that. They have continually refused to treat our primary case, and he did that with that example, where there is some functionality in one reference or two, where you click on the tile, prior art tile, and a different window opens up. That was not our primary case, and they have never treated our primary case. Our primary case was, you have a tile, prior art tile, like an active desktop item. If you select it by mouse click or keyboard manipulation, the user is permitted to move around in that tile, not another window, in that tile. It's permitted to manipulate things in that tile, such as activate a hyperlink. That has always been our primary case, and in fact, to disagree with us, I respectfully submit that the board would have to rule that a user who has been given the ability to see a webpage and activate links on it has not been provided access to that webpage. That's absurd. I'm sorry, and that's because that's what active desktop did. Active desktop items permitted you to click on them, click on a link in the webpage, move around in the webpage, highlighting different links, activating different links, and that was our primary case. Their briefs just go to the utmost to avoid treating that at all. They point to webpages without hotspots and links. We never relied on any of that. They point to this other functionality, which is disclosed in the MSIE kit, that you can configure it so another web browser window will open. They simply ignore the main case we put it forward. If I may, Your Honor, the last point I'd like to make, Your Honor, is the board did not deny the motion to amend or by denying the request to put the claims in an appendix. Page limits, of course, and limits on briefing are parts of every legal tribunal. I know- Right, and sometimes they can be unfair. Sometimes they can be potentially unfair, but- They had, what, 52 claims, and the statute contemplates, it doesn't entitle, but it contemplates one substitute claim for each claim. If they had put 52 claims in 15 pages and then tried to make an argument about the meaning of the terms that they were introducing, the written description support, how each one of them, claim by claim, is both supported in the spec and overcomes prior art, how could they possibly have done that in 15 pages? Well, they couldn't with 52 pages, but there's still, it's a reasonable number of pages, and they had the ability to convince the board to do something different. They didn't actually ask for anything more than- No, and I understand the waiver argument, but the sufficiency argument to actually make the arguments, even if they put the claims in the appendix, to make all of the arguments for 52 claims is not entirely clear to me, although I will also say they haven't specified what they would have said, specified here what they would have said. Well, more importantly, Your Honor, they haven't specified what they did say. It was their burden. They were the movement. It was their burden. They didn't have the call transcribed, and they've made no attempt to show this court what was actually said on that call. So, I was on that call. I can't tell you today that I remember exactly what was said. I'm fairly certain the words due process were not mentioned, but it was their burden to do that, and their burden to show you that they gave the board sufficient reason to waive the limit or change the rules. They haven't done that. That's all I have, Your Honor. I'm willing to, unless the court has other questions for me, see if we have time. No? Thank you. Thank you. Ms. Schoenfeld? Yes, Sean Feld, yes, thank you. May it please the court, the PTO is intervening only for the motion to amend issue, which is a very narrow issue of whether or not, when the board followed its own rules, it abused its discretion by requiring SERFCAS to include a claim listing in its motions to amend, as you just heard, the... Look, assume with me just that your rules allowed this, and that the real question is, is there something wrong, say, APA wrong? Forget even the due process clause. Just APA wrong. Notice and a sufficient opportunity to actually address things. How is the opportunity that they had here sufficient to meet that APA requirement? And maybe you're going to say, they didn't ask, end of story. But that's what I'm interested in, not in whether they violated, whether the board violated the regulations or even violated due process, but the more robust statutory opportunity argument. Right, so as you mentioned, the regulation in the synopsis case, it was found, the board had the authority to require the claims listings in the 15 pages. And as you mentioned as well, the argument that they did not properly ask, and they didn't show an abusive discretion, is also a valid argument. You know, 15 pages is... I mean, there's nothing that says that 15 pages is not a sufficient amount of pages to amend their claims and describe the patentability of their claims. The statute, like you said, it contemplates that you can provide a substitute claim for each claim, but doesn't entitle you to. I mean, as with any page limit, you have to choose what you want to do. I mean, when you're briefing to this court, you have to choose what arguments that you make. If they wanted to show, say to us, how they were prejudiced, what do you think that they would have to show? I mean, I think in this case... And assume with me again, I want to focus on prejudice. Just assume, contrary to your position, that it was well understood by all the participants in the conference call in which the board panel said, you have to put them in the claims, also meant we're not going to give you more space. I realize you contest that assumption, but assume that that's what... Then it seems to me the argument here comes down to, they just haven't shown in a case-specific way that they were prejudiced by this. What do you think that they would have to show to try to make such a case? Well, I think they would have to show that they had specifically asked, that they had said that they had wanted to amend this many claims. They wanted to come forth with these amendments and make certain arguments, and that they would not be able to fit those arguments in the pages. But I do think in this case, when we're looking at deference to the board's decision and abusive discretion for the board following its own rules, it would be very difficult for them to show that the board abuses discretion. Maybe if their claim was 20 pages, so there was no possible way that each claim... I mean, that they could fit any claim, that they could amend any claim into their amendment, that would be an abusive discretion. But I think they are facing a tough challenge here. Are there any further questions? No, thank you. So I have about three minutes. I want to address three topics. One, Erdetto. This is a case that is just like Erdetto. The term is not explicitly defined, but Erdetto is all about when the term has no meaning of skill in the art, you have to look at the spec and draw the characteristics of it. Second, persistence. It's impossible to be a bookmark without being persistent. It can't be done. And the patent in three places says the tiles are bookmarks. For your reference, Your Honor, it's column 4, 1 through 5, 11, 50 to 52. I'm sorry, which column, sir? 4, 1 through 5, 11, 50 to 52, and 8, 31 to 32. That, in addition to all the other things that I talked about with persistence, means that there's no way that the patentee couldn't have persistence as an essential characteristic of a tile. Third, and my last point, I'll give one more try at the assigned thing, because I'm making it way more complicated than it is. The board below did not apply this claim construction to any of the prior art. Each of the pieces of prior art miss one or two elements of this claim construction, either persistence and assigned, assigned and immediate access, whatever. Our construction was, it did... I'm sorry to interrupt, but if I were to think that you are not entitled, for waiver or other reasons, to the immediate access construction, but possibly entitled to the other two, what's the disposition? I think it would need to be reversed and remanded. Because there is some prior art that might fall out, even under the two-thirds construction. Your Honor, the instant access point is, we're not saying instant in terms of time. What we're saying, the construction we proposed, is when selected, it provides access. Selected means however you select the tile. You can double-click it, you can pass the mouse over it, whatever mode of selection, that provides access. And that's what the... And then I'll get to the assigned point, because it's the same quote. The tile instantly provides the user with access to the underlying information when selected, when selected. And so what that means, and then on column... That's column 9, line 25. If you look at column 8 at the top, it says how it's different from an icon. I'm sorry, I'm confused about this. The board's construction is a graphical user interface element whose content may be refreshed, and that when selected provides access to an information source. Right. So what is it you're saying, that they didn't include with respect to this immediate access point? Well, the way they're interpreting that is just like an icon. And column 8 at the top says that with an icon, it doesn't provide access when you select it, it provides the ability to get access when you select it. So you click on an icon, and then you click again, and you get to the program. Whereas the patent describes only the selection process provides access. Or when selected, you have access to the information source. It's not a two-step process. And they are not applying the construction... I mean, the words there say provide access, but I mean, I have a laptop in the back. I have access to my information. I have to go back there, open it, turn it on, click it, get in, and I have access to the information. That's not the access that they're talking about here. The access that the patent talks about is when selected, you have access to the information. Not doing five different steps like the prior art icons. And that's the distinction. Can you wrap up? Yes, and then the last point, I'll try again on this assigned thing. So the patent says the tile instantly provides the user with access to the underlying information. That's the underlying information that is the tile. And so it is also the information that is associated with the tile. But when you select, you go to that which it's assigned to. The associated language refers to merely in a static operation. When you're looking at the screen and you see the tile, and it is associated with an information source. But this part of the definition requires that, okay, then when you select it, you go to the information source, not somewhere else. Okay. Thank you, Mr. Alcock. Thank you, John. The case is submitted. All rise, please.